**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 18-14-DLB-CJS**

**WILLIAM C. SHEHAN, JR.**                                              **PLAINTIFF**


**v.**                        **MEMORANDUM OPINION AND ORDER**


**TURNER CONSTRUCTION COMPANY, et al.**                  **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on three pending Motions: Defendant Turner Construction Company's Motion to Dismiss (Doc. # 15); Defendant American Museum of Natural History's Motion to Dismiss (Doc. # 16); and Defendant United States Department of Justice's Motion to Dismiss (Doc. # 22). Plaintiff William C. Shehan, Jr., who is proceeding *pro se*, has filed a Response to each Motion (Docs. # 40, # 41, # 42), and Defendants have each filed a Reply (Docs. # 43, # 44, # 45). Accordingly, the above motions have been fully briefed and are ripe for adjudication. For the reasons set forth below, all three motions to dismiss will be **granted**.

**I.       BACKGROUND**

According to Plaintiff, this lawsuit stems from the Department of Justice's prosecution of him in this Court for attempted tax evasion beginning in 2010. *See United States v. Shehan*, Case No. 2:10-cr-72. Shehan pleaded guilty in May 2011 to attempted income tax evasion and was sentenced to a 24-month term of incarceration. Shehan contends in this civil suit that the Department of Justice's prosecution was a "fabricated fraud" and ultimately "destroyed [his] finances, bonding capacity and businesses." (Doc.

# 1, at 8, 20). He asserts that his ability to engage in his profession has wrongfully been hindered as a result of his prosecution. Specifically, Shehan alleges that because of his conviction, he is unable to obtain bonding and provide financial strength to engage in business deals with Defendants Turner Construction Company and the American Museum of Natural History. (*See id.* at 16).

Plaintiff, proceeding *pro se*, filed this action on January 16, 2018, naming as Defendants Turner Construction Company ("Turner"), United States Department of Justice (the "DOJ"), and the American Museum of Natural History (the "Museum") and seeking damages allegedly resulting from the DOJ's prosecution of him for tax evasion and from Turner's and the Museum's breach of contracts for work as he attempted to rebuild his businesses following his conviction. (*See* Doc. # 1).

Shehan is the owner of L.T.C. Signature Environments, LLC, doing business as Larson Theme Construction, a Kentucky limited liability company which specializes in designing theme environments. (*Id.* at 5). He asserts that two contracts were formed that give rise to his claims against Turner and the Museum. First, he alleges a contract was formed in 2016 between himself, Defendant Turner, and non-party St. Elizabeth Healthcare in which Turner agreed to help Shehan "find projects and get work" in exchange for Shehan's assistance in mending a strained business relationship between Turner and St. Elizabeth (the "2016 Contract"). (*Id.* at 9-11; *see* Doc. # 1-1, at 2). Shehan asserts that as a result of his efforts, St. Elizabeth awarded Turner a contract to build a $200 million cancer treatment center and placed Turner in a favorable strategic position to bid for future projects with St. Elizabeth. (Doc. # 1, at 14).

Second, Shehan asserts that he and Turner entered into a contract November 3, 2017, after Turner had been awarded a construction project to build an expansion for the American Museum of Natural History located in New York (hereinafter referred to as the "Gilder Center project"). (*Id.*). Shehan alleges that as part of the Gilder Center project, Turner, by and through its representative Andrew Thomann, entered into a contract with him on November 3, 2017, to design/build and design/assist with the Shotcrete Canyon for the Museum's Gilder Center project (the "2017 Contract"). Shehan avers that "[i]n order to issue contract documents, on Wednesday, November 8, 2017," Turner's representative "requested documentation of Shehan's vital statistics, bonding capacity and financial strength . . . ." (*Id.*). However, he alleges the contract was terminated by Turner "and by extension" the Museum on November 29, 2017, because he "could not provide an immediate bonding facility and financial strength." (*Id.* at 15, 16).

Shehan further maintains that the 2016 Contract for Turner to help Shehan "find projects and get work" was also terminated during this time, "days after Turner captured the $200 million St. Elizabeth contract[.]" (*Id.* at 16). He alleges that when he could not immediately provide a bonding facility, rather than provide Shehan with work on the Shotcrete Canyon that could be negotiated and did not require bonding, Turner declined attempts to provide him with any work and "terminated [his] design/build – design/assist contract . . . and Turner's broader contract with [him] to: find projects and get work." (*Id.* at 15-16) (emphasis omitted). He asserts that he has suffered damage as a result of these terminations. (*Id.*).

Plaintiff also alleges that "[w]hile not the focus of the action," he has suffered damage from "the felonious prosecution" by the DOJ in the unrelated criminal tax case.

(*Id.* at 16).   As a result of these events, Shehan asserts "Defendants stole by deception, [his] path to rebuilding [h]is business" and he therefore filed the instant action.  (*Id.* at 17). In his Complaint, Shehan alleges nine counts: 1) intentional infliction of emotional distress ("IIED") by the DOJ and Turner; 2) breach of contract by Turner; 3) conspiracy to defraud by Turner; 4) unfair business practices by Turner; 5) theft by deception by Turner; 6) unjust enrichment by Turner; 7) breach of good faith and fair dealing by Turner; 8) a claim for punitive damages against all Defendants; and 9) a claim for reasonable attorney's fees against all Defendants.  (*Id.* at 21-27).   The last count being brought even though he is proceeding pro se without counsel.

In lieu of an answer, each Defendant has filed a Motion to Dismiss Plaintiff's original Complaint.  (Doc. # 15; Doc. # 16; Doc. # 22).  Turner filed its Motion to Dismiss on March 1, 2018.  (Doc. # 15).  Turner argues that because they have initiated a parallel action in New York state court based on a breach of a separate confidentiality agreement and other actions by Shehan, the Court should abstain from hearing the instant matter based on the Supreme Court's holding in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  (*Id.* at 8-19).  Alternatively, if the Court declines to abstain, Turner moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.  (*Id.* at 19-39).

The Museum filed its Motion on March 1, 2018.  (Doc. # 16).  The Museum moves to dismiss the Complaint pursuant to Federal Rule 12(b) for: 1) lack of personal jurisdiction, and 2) failure to state a claim for which relief can be granted.  The Museum

also asserts that because Plaintiff is not the real party in interest, he lacks standing to bring this action.  (*Id.* at 14; Doc. # 45, at 10-11).

The DOJ filed its Motion to Dismiss, or, alternatively, Motion for Summary Judgment on April 3, 2018.  (Doc. # 22).  The DOJ moves to dismiss the Complaint on the basis that Shehan has failed to exhaust all administrative remedies prior to filing the current suit as required by the Federal Torts Claim Act ("FTCA") and is thus barred from bringing this action in district court.  (Doc. # 22-1, at 1-2).  In support, the DOJ provides that a search of the DOJ "database of administrative claims revealed no claim presented by William Shehan" as of March 20, 2018.  (*Id.* at 2; Doc. # 22-2).  Additionally, the DOJ asserts that because Plaintiff's IIED claim against the DOJ arises out of a contractual relationship and malicious prosecution claim, that IIED claim is excepted from coverage under the FTCA, and thus the DOJ has not waived its sovereign immunity.  (Doc. # 22-1, at 2-6).  Alternatively, the DOJ asserts that the case should be dismissed pursuant to Federal Rule 12(b)(6) for failure to state a claim for which relief can be granted.  (*Id.* at 6-7, 8-9).  Finally, the DOJ argues that pursuant to federal law, the Government cannot be liable for punitive damages, nor is there a separate cause of action for attorney's fees under the FTCA.  (*Id.* at 7).

Subsequent to each Motion to Dismiss filing, Shehan filed a 79-page submission on April 17, 2018, wherein he sought to respond to the pending Motions to Dismiss, move to open discovery, and to amend his Complaint.  (Doc. # 24; *see* Doc. # 39).  On the same day, the same filing was docketed as a proposed Amended Complaint.  (Doc. # 26).  A Motion Conference was held on June 12, 2018 by the presiding Magistrate Judge regarding Plaintiff's submission and to clarify the record.  (Doc. # 39).  Plaintiff's filing was

stricken as procedurally improper and Shehan was provided with additional time to file separate Responses to each of the Defendants' Motions to Dismiss and/or a Civil Rule 8 compliant amended complaint. (*Id.* at 2). Shehan did not file an amended complaint, instead filing separate Responses to each of Defendants' Motions (Doc. # 40; Doc. # 41; Doc. # 42). However, in his Responses to Turner and the Museum, Shehan provides that he is responding to each party's Motion to Dismiss his Amended Complaint and refers to a "motion for leave to file a Second Amended Complaint." (Doc. # 40, at 1; Doc. # 41, at 1). Moreover, in his Response to Turner, Plaintiff attaches his original Complaint (Doc. # 1) and in his Response to the Museum, he attaches his prior 79-page filing that was previously stricken.

Pursuant to this Court's Minute Entry Order of June 12, 2018 (Doc. # 39), Plaintiff's 79-page submission was stricken from the record. Although the same filing was also docketed at Entry 26, it is the same procedurally improper filing. Shehan was given an opportunity to file an amended complaint, but chose not to do so. Because he has not filed an amended complaint, this Memorandum Opinion and Order addresses Defendants' Motions to Dismiss based upon the allegations in the original Complaint. Any additional factual allegations presented by the Plaintiff in his Responses to the Motions to Dismiss have also been considered herein.

For the reasons below, the Motions to Dismiss filed by all three Defendants will be **granted.**

## II.    ANALYSIS

### A.    Plaintiff's claims cannot be maintained against the DOJ.

"As a sovereign, the United States is immune from suits, except to the extent that it has consented to be sued."  *Johnson v. Conley*, No. 0:12-cv-18-DLB, 2012 WL 1947330, at *3 (E.D. Ky. May 30, 2012) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)).  An exception to the United States' sovereign immunity is the FTCA.  The FTCA "acts as a waiver of the United States' sovereign immunity in state law tort actions . . ." and permits plaintiffs to bring certain tort claims against the Government.  *Id.*   However, "although the FTCA is a limited waiver of the United States' immunity, it does not waive the sovereign immunity of federal government agencies."  *Johnson*, 2012 WL 1947330, at *3 (citing 28 U.S.C. § 2679(a)); *see Yisra'El v. U.S. Dep't of Justice*, No. 5:11-cv-289-KSF, 2012 WL 1153476, at *2 (E.D. Ky. Apr. 4, 2012) (". . . a federal agency may not be sued under the FTCA."); *see also Millhouse v. Jones*, No. 6:18-cv-125-DLB, 2018 WL 3716311, at *3 (dismissing FTCA claims against individual defendants and the Bureau of Prisons).  Rather, "[i]t is the United States and not the responsible agency . . . that is the proper defendant in a FTCA suit." *Johnson*, 2012 WL 1947330, at *3 (citing *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990)).

In his Complaint, Shehan asserts a claim for IIED against the DOJ, as well as separate "claims" for punitive damages and attorney's fees "reasonably incurred in this action[.] (Doc. # 1, at 27).   As a threshold matter, typically, punitive damages and attorney's fees are a remedy, and not a separate cause of action.  Even if construed as separate claims, the DOJ correctly points out that the Government cannot be liable for punitive damages.  *Premo v. United States*, 599 F.3d 540, 545 (6th Cir. 2010) (citing 28

U.S.C. § 2674). Moreover, generally, "[i]t is clear that the FTCA does not waive the United States' immunity from attorneys' fees."[1] *Bergman v. United States*, 844 F.2d 353, 355 (6th Cir. 1988) (citing *Joe v. United States*, 772 F.2d 1535 (11th Cir. 1985)). Therefore, these claims, which are forms of relief, cannot be pursued against the DOJ or the United States and therefore will be dismissed with prejudice.

As for Shehan's remaining claim against the DOJ, he has labeled his tort claim as one for IIED, but the Government indicates that his claim should be construed as one arising out of malicious prosecution or interference with a contractual relationship. If the Government is correct in its assertion, then Shehan's claim would fall within an exception to the exception of sovereign immunity, presented under 28 U.S.C. § 2680(h). In other words, Shehan's claim would be excepted from the immunity waiver afforded under the FTCA and he therefore would not be able to pursue that claim.

Title 28 of the United States Code, § 2680(h) provides an exception to the FTCA, whereby the United States has not waived sovereign immunity as to:

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . .

The Sixth Circuit has stated that "courts have interpreted 'arising out of' broadly." *Wilburn v. United States*, 616 F. App'x 848, 857 (6th Cir. 2015); *see also Brooks v. Silva*, No. 7:08-cv-105-KKC, 2010 WL 2595984, at *2 (E.D. Ky. June 24, 2010). "[A] cause of action

---

[1] While courts have held that "the FTCA provides jurisdiction over an action to recover attorney's fees *qua* damages against the United States for the torts of abuse of process and malicious prosecution under the FTCA if 'the law of the place' where the tort occurred so provides," *Tri-State Hospital Supply Corp. v. United States*, 341 F.3d 571, 581 (D.C. Cir. 2003), Shehan states in his complaint that he is seeking attorney's fees "and other litigation costs reasonably incurred in *this* action[.]" (R. 1, at 27) (emphasis added). Thus, the exception to the general rule that immunity is not waived as to attorney's fees is not applicable here.

which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim[.]" *Hartwig v. United States*, 80 F. Supp. 2d 765, 773 (N.D. Oh. 1999) (quoting *Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986)) (internal quotation marks omitted). "Even if all of Plaintiff['s] allegations regarding the government's conduct are true, if their claims are in truth ones for [those excepted from FTCA coverage under the statute], this court does not have jurisdiction to hear them[.]" *Id.* at 768. The Sixth Circuit has noted that "[i]t is the substance of the claim and not the language used in stating it which controls." *Milligan v. United States*, 670 F.3d 686, 696 (6th Cir. 2012) (quoting *Reed v. U.S. Postal Service*, 288 F. App'x 638, 640 (11th Cir. 2008)). In *Hartwig*, the district court explained that in order to determine whether a plaintiff's claim is one arising out of an excepted cause of action under § 2680(h), a court must compare a plaintiff's claim with the "traditional and commonly understood definition" of the excepted cause of action, "rather than between [p]laintiff['s] claim[] and the definition" of the excepted cause of action "in any particular state." *Hartwig*, 80 F. Supp. 2d at 771; *see also Fitch v. United States*, 513 F.2d 1013, 1015 (6th Cir. 1975) ("Under 28 U.S.C. § 2680(h), Congress has chosen not to allow the courts to consider 'any claim arising out of . . . misrepresentation.' We must construe this term according to the 'traditional and commonly understood legal definition of the tort.'") (citing *United States v. Neustadt*, 366 U.S. 696, 706 (1961)).

Here, although Shehan labels his claim as one for IIED, his claim clearly arises out interference of contract rights and thus this Court lacks jurisdiction to hear it. Under the Restatement (Second) of Torts and Kentucky law, "[o]ne who intentionally and improperly

interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." *Bassett v. National Collegiate Athletic Ass'n*, No. 5:04-425-JMH, 2006 WL 1312471, at *3 (E.D. Ky. May 11, 2006) (quoting Restatement (Second) of Torts § 766B (1979)).

For example, in *Mark v. United States Department of Transportation*, the district court in the Eastern District of Michigan determined that a plaintiff's IIED and negligence claims arose out of interference with contract rights and thus were barred when his "tort claims [were] thinly veiled contract claims." No. 17-cv-13894, 2018 WL 3861729, at *3 (E.D. Mich. Aug. 14, 2018). In *Mark*, the plaintiff worked as a flight engineer for an air carrier and claimed that he was suffering from PTSD after a "near disaster" involving an aircraft. *Id.* at *1. Plaintiff reported the event to a committee established by the Federal Aviation Administration, which committee was tasked with reviewing reported safety concerns. *Id.* at *1-2. The committee was created as part of an agreement between the aircraft carrier and the Federal Aviation Administration. *Id.* at *2. Under the agreement, certain procedures were established in order to address when airmen reported medical qualification issues, which the plaintiff alleged were not followed and caused his subsequent termination. *Id.* The court held that the substance of the plaintiff's claims involved a committee member's failure to abide by the terms of an agreement, and plaintiff argued his employment contract was ultimately terminated because of the failure. *Id.* at

*3.  Thus, because plaintiff's allegations "plainly reflect[ed] a contract dispute," sovereign immunity had not been waived and the court lacked jurisdiction to hear the claims.  *Id.*

Like *Mark*, the substance of Shehan's IIED claim is based upon the DOJ's alleged interference with contract rights, specifically with Turner and the Museum.  To support his tort claim, Shehan provides that he "cannot bond and provide financial strength because of the felonious prosecution by the [DOJ] of Shehan in his tax case." (Doc. # 1, at 21).  He explains that Turner "damaged Shehan by terminating both contracts because [he] could not provide an immediate bonding facility and financial strength" as a result of the DOJ's prosecution and therefore "[d]amages by the Defendants are now the [l]iability of the [DOJ]." (*Id.* at 22).  Shehan asserts that because of the DOJ's prosecution, he was unable to provide bonding for the Gilder Center Project under the 2017 Contract which, as a result of the DOJ's actions, was terminated.  In other words, the alleged interference by the DOJ which induced Turner to terminate its contract with Plaintiff is essential to Plaintiff's IIED claim.  Thus, Shehan's claim should be construed as one arising out of interference with contractual rights, rather than one of IIED.

Alternatively, the DOJ argues that Shehan's IIED claim arises out of malicious prosecution.   "Whether the underlying government conduct qualifies as one of the intentional torts specified in § 2680(h) is a matter of federal law, not state law[.]"  *Olson v. U.S. Postal Service*, No. 14-cv-3213 (JNE/BRT), 2015 WL 4488438, at *2 (D. Minn. July 23, 2015) (citing *Molzof v. United States*, 502 U.S. 301, 305 (1992)). In determining the "traditional and commonly understood definition" of an excepted tort under § 2680(h), a court must consult "such appropriate sources as the *Restatement (Second) of Torts* and federal cases construing the exception."  *Talbert v. United States*, 932 F.2d 1064, 1067

(4th Cir. 1991) (quoting *Jimenez-Nieves v. United States*, 682 F.2d 1, 3-4 (1st Cir. 1982)).

The Fifth Circuit Court of Appeals broadly construed malicious prosecution to be "defined

as 'one that is begun in malice, without probable cause to believe it can succeed, and

that finally ends in failure . . . . The gist of the action is the putting of legal process in force

regularly for the mere purpose of vexation or injury." *EEOC v. First Nat'l Bank*, 614 F.2d

1004, 1007 n. 3 (5th Cir. Apr. 2, 1980) (citing 52 Am. Jur. 2d § 2). This definition accords

with Kentucky law. *See Martin v. O'Daniel*, 507 S.W.3d 1, 12-13 (Ky. 2016) (merging the

Restatement (Second) of Torts definitions for malicious prosecution in a civil and criminal

proceeding into "a single statement applicable to" all malicious prosecution claims).

Moreover, the district court in the Western District of Louisiana has dealt with this

exception, finding that a plaintiff's claims arose out of malicious prosecution and other

excepted torts when his claims were "based on his allegations that [d]efendants unfairly

prosecuted him . . . and conspired to cover-up any constitutional violations." *Bounds v.*

*United States District Court*, No. 06-0233, 2007 WL 1169377, at *2 (W.D. La. Apr. 18,

2007).

Here, Plaintiff's IIED claim also arises out of his alleged malicious prosecution

claim. In his Complaint, Shehan consistently references his 2010 tax prosecution,

claiming that "the tax case was a fabricated fraud" and further alleging that he can no

longer engage in his business "because of the felonious prosecution by the [DOJ] . . . ."

(*Id.* at 20, 21). Further, to support his IIED claim, he asserts that during his tax case a

"preindictment delay from 2005 to 2010 was conceived and executed to protect" a public

official, alleging that his "prosecution was missile-launched by the [DOJ] as necessary to

protect" a private entity "from civil litigation led by Shehan[.]" (*Id.*). The conduct which

Plaintiff relies upon in asserting his tort claim arises out of his 2010 tax prosecution and is dependent upon those events he alleges to have occurred during that time. Thus, his claim arises out of alleged malicious prosecution. In fact, what Shehan alleges as a freestanding IIED claim is more so a thinly-veiled attempt to bypass the FTCA's limitations. Under Kentucky law, IIED "is a gap-filler tort only available when the alleged tortious conduct cannot be redressed by traditional common law torts . . . ." *Carter v. Porter*, 617 F. Supp. 2d 514, 519 (E.D. Ky. 2008) (quoting *Cissell v. KFC Corp.*, No. 2006-CA-001596-MR, 2007 WL 3227571, at *1-2 (Ky. Ct. App. Nov. 2, 2007)). Here, Shehan asserts the Defendants "stole [his] method, means and plan for a successful re-entry into society" which allegation stems from his belief that he was maliciously prosecuted. His claim is not actually a gap-filler, but an attempt to seek damages for emotional distress that he has suffered because he can no longer engage in his profession as a result of the alleged "felonious prosecution" by the DOJ. (*See id.* at 21). Therefore, Shehan's claim is excepted from coverage under the FTCA. Because the United States has not waived its sovereign immunity, the claims asserted against the DOJ must be dismissed with prejudice.

Even if the Court were to construe Shehan's claim as one for IIED, then the alternative circumstances would still warrant dismissal, but without prejudice.[2] In his Complaint, the only Government entity Shehan asserts is liable is the DOJ. He does not name any other government entity, individual, or the United States. As discussed above, the United States "and not the responsible agency" is the only proper defendant in a suit

---

[2] In its Motion to Dismiss, counsel for the DOJ has also addressed the elements of IIED arguing that Shehan has failed to state a claim under Federal Rule 12(b)(6). However, such analysis is not necessary because the threshold requirements of administrative exhaustion and naming the proper defendant in an FTCA suit have not been met.

under the FTCA.  *Johnson*, 2012 WL 1947330, at *3.  Therefore, because the DOJ is named as a defendant, and not the United States, claims against the DOJ should be dismissed without prejudice.

Moreover, even if the proper defendant were named, Shehan has not exhausted all of his administrative remedies prior to filing this suit.  "[T]he FTCA requires a plaintiff to exhaust administrative remedies prior to instituting such a lawsuit."  *Harris v. City of Cleveland*, 7 F. App'x 452, 458 (6th Cir. 2001).  A plaintiff exhausts administrative remedies if they present their claim to the appropriate agency within two years of its accrual and the agency denies their request.  *Pineda-Cabellero v. U.S. Marshals Service*, No. 5:11-cv-126-KKC, 2011 WL 1517987, at *2 (E.D. Ky. Apr. 18, 2011) (citing 28 U.S.C. § 2675(a)); *Myers v. United States*, 526 F.3d 303, 305 (6th Cir. 2008).  "Denial of an administrative claim is statutorily presumed if six months pass without action on a properly filed administrative claim."  *Harris*, 7 F. App'x at 458 (citing 28 U.S.C. § 2675(a)).  If a plaintiff fails to exhaust his administrative remedies prior to filing suit, then the suit should be dismissed.  *Millhouse*, 2018 WL 3716311, at *3 (citing *McNeil v. United States*, 508 U.S. 106 (1993)); *see also Harris,* 7 F. App'x at 458-59 (upheld district court's dismissal of tort claims for lack of subject matter jurisdiction when plaintiff filed an administrative claim under the FTCA four months after filing suit).

Shehan filed this action on January 16, 2018.  (*See* Doc. # 1).  In its Motion to Dismiss, the DOJ provides a signed declaration from a DOJ employee which reflects that as of March 2018, the DOJ database of administrative claims reflected no claims filed by Shehan.  (Doc. # 22-1, at 2; Doc. # 22-2).  In Response to the DOJ's Motion to Dismiss, Plaintiff provides he filed an administrative claim with the DOJ and IRS in April 2018,

almost 3 months after filing his Complaint. (*See* Doc. # 42; Doc. # 42-1, at 1-2).   In his administrative claim, Shehan asserts that his cause of action arose on November 1, 2017. (Doc. # 42-1, at 1).  Therefore, even were the Court to conclude that Shehan could pursue an IIED claim against the United States, the claim would nevertheless have to be dismissed without prejudice while Shehan pursues his administrative remedies.

**B.    Personal jurisdiction over the Museum is lacking.  Shehan also fails to state a viable claim against the Museum.**

### 1.    Personal Jurisdiction

The Museum has moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. (Doc. # 16, at 6-10).  "When a defendant brings a Rule 12(b)(2) motion to dismiss, the burden is on the plaintiff to establish personal jurisdiction." *Hall v. Rag-O-Rama, LLC*, No. 2:18-cv-12-DLB-CJS, 2019 WL 137589, at *2 (E.D. Ky. Jan. 8, 2019) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1992)). However, a "plaintiff cannot meet [his] burden by simply pointing to the pleadings, 'but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Id.*  This Court must view "the pleadings in the light most favorable to the plaintiff and 'does not weigh the controverting assertions of the party seeking dismissal." *Id.*

"When a federal court sits in diversity, it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Newberry v. Silverman*, 789 F.3d 636, 641 (6th Cir. 2015).  Thus, "the court [must] determine whether both [Kentucky's] long-arm statute and the Due Process Clause of the United States Constitution permit the exercise of jurisdiction."  *Id.*  "The Kentucky Supreme Court has held that the state's long-arm statute (Ky. Rev. Stat. § 454.210) does not reach the outer

limits of the Due Process Clause." *Hall*, 2019 WL 137589, at *3 (citing *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011)). Therefore, analysis of personal jurisdiction under Kentucky law is a "two-step process." *Newberry*, 789 F.3d at 641 (citing *Caesars*, 336 S.W.3d at 57). "First, a court must look to see if the cause of action arises from the type of conduct or activity that is enumerated in the" Kentucky long-arm statute. *Id.* If the first prong is satisfied "then the court must assess whether 'exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.'" *Id.*

The Kentucky long-arm statute provides nine categories of conduct which may subject a defendant to personal jurisdiction in a Kentucky court. Ky. Rev. Stat. § 454.210. In addition, the statute also requires "that a plaintiff's claim 'arise from' the enumerated conduct." *Hall*, 2019 WL 137589, at *3 (citing Ky. Rev. Stat. § 454.210(2)(b)). "A claim 'arises from' certain conduct when there is a 'reasonable and direct nexus' between the conduct causing injury and the defendant's activities in the state." *Holbrook v. Mazda Motor Corp.*, 6:17-cv-244-DCR, 2018 WL 1571905, at *2 (E.D. Ky. Mar. 30, 2018) (citing *Caesars*, 336 S.W.3d at 57). In his Response, Shehan asserts that the fourth category gives this Court personal jurisdiction over the Museum.[3] (Doc. # 41, at 8-9). Under this category, a Kentucky court is permitted to exercise personal jurisdiction over a defendant who has:

> caus[ed] tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in

---

[3] The fourth category is found under Ky. Rev. Stat. § 454.210(2)(a)(4). In his Response, to support his argument that this Court has personal jurisdiction over the Museum, Shehan quotes (a)(4), yet he cites to the second category under the statute, Ky. Rev. Stat. § 454.210(2)(a)(2) which submits a defendant to personal jurisdiction when the defendant contracts "to supply services or goods in this Commonwealth[.]" Shehan has not alleged that the Museum entered into a contract to supply services or goods in Kentucky and has mistakenly cited to this provision. The Court will construe his argument as being made under the quoted portion of the statute, (a)(4).

any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth . . . .

Ky. Rev. Stat. § 454.210(a)(4). In other words, to be subject to personal jurisdiction under this subsection, "a defendant must (1) have caused a tortious injury in Kentucky, that (2) arises out of defendant['s] activities in conducting business, soliciting business, or deriving substantial revenue from business in Kentucky, (3) provided the conducting, soliciting, or deriving substantial revenue set out in subsection (2) [of the statute] is persistent." *Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 970 (E.D. Ky. 2017).

Here, Plaintiff has not established this Court has personal jurisdiction over the Museum, a non-profit organization located in New York (Doc. # 16, at 6). As the Museum points out in its Reply, Shehan has not identified any act or omission which caused him injury. (Doc. # 45, at 4). Rather, Shehan asserts in his Complaint it was Turner who awarded him the 2017 Contract and Turner who breached it. (Doc. # 1, at 14, 22-24). Moreover, Shehan has not established that his injury arose out of the Museum's activities in conducting or soliciting business. In his Response, Shehan asserts that a "nonresident defendant transacts business by negotiating and executing a contract to a Kentucky resident[.]"[4] (Doc. # 41, at 9). However, an "entry into a single, potentially long-term contract" does not constitute persistent conduct. *Churchill Downs, Inc. v. NLR Ent., LLC*,

---

[4] Shehan asserts that he is quoting the Sixth Circuit Court of Appeals decision in *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998). However, this quote does not appear in this decision. Rather, as the Museum correctly asserts, this decision analyzes personal jurisdiction under Ohio's long-arm statute which provided that an Ohio court may exercise personal jurisdiction over a defendant who "transact[s] any business in" Ohio. *Cole*, 133 F.3d at 436.

No. 3:14-cv-166-H, 2014 WL 2200674, at *8 (May 27, 2014). Shehan also asserts that the Museum "developed a business relationship with [him] through communications . . . in relation to the Gilder Center project[.]"[5] (Doc. #41-1, at 66-67). Even assuming the Museum did engage in persistent solicitation of business in Kentucky, Shehan has failed to assert his injury arises out of this conduct. Rather, he provides in that he has suffered injury "[a]s a direct result of Turner's breaches of contract[.]" (Doc. # 41, at 6). Shehan does not assert that his injuries arose out of the Museum's activities, but that his injury arose from Turner's conduct. Therefore, Shehan has not established that the Museum's conduct falls under § 454.210(a)(4) and this Court does not have personal jurisdiction over the Museum.

Even if Shehan were somehow able to show the Kentucky statute is satisfied, the Court would still lack personal jurisdiction over the Museum under the due process prong. Under this prong, "the plaintiff must establish 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hall*, 2019 WL 137589, at *5 (citing *Air Prods. & Controls, Inc. v. Safetech, Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007)). This prong may be satisfied through either specific or general jurisdiction. *Id.* Here, the parties assert their arguments as to whether this Court has personal jurisdiction over the Museum under the specific jurisdiction analysis. (*See* Doc. # 16, at 8-10; Doc. # 41, at 9; Doc. # 45, at 6-7).

To satisfy the requirements of due process under specific jurisdiction, the Plaintiff must establish the following three elements:

_____

[5] Shehan asserts this within an attachment to his Response, which attachment is the 79-page submission filed by Plaintiff that was previously stricken from the record as being improperly filed (*see* R. 39).

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Means v. U.S. Conf. of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Mach. Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). First, a defendant purposefully avails itself when they create "a 'substantial connection' with the forum state such that [the defendant] 'should reasonably anticipate being haled into court there.'" *Hall*, 2019 WL 137589, at *5 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). This element "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quoting *Burger King*, 471 U.S. at 475)) (internal quotation marks omitted). In his Response, Shehan asserts that "[t]he making of a substantial business contract with a corporation based in another jurisdiction has been held to be adequate to satisfy the requirements of the 'purposeful' test." (Doc. # 41, at 9) (citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972)).

"With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions for the consequences of their activities.'" *Id.* (quoting *Air Prods.*, 503 F.3d at 551). "Although entering into a contract with an out-of-state party *alone* does not automatically establish sufficient minimum contacts, the presence of certain factors in addition to the contracts will be found to constitute purposeful availment." *Air Prods.*, 503 F.3d at 551. "These factors include 'prior negotiations and contemplated future

consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Hall*, 2019 WL 137589, at *6. However, "a one-time transaction with a plaintiff in the forum state is unlikely to be sufficient under the Due Process Clause." Additionally, where a "plaintiff rather than the defendant" initiates contacts between the parties, the Sixth Circuit Court of Appeals has found that these "contacts lack quality . . . because the unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum." *Air Prods.*, 503 F.3d at 552 (citing *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)) (internal punctuation and quotation marks omitted).

Here, Shehan has not established the Museum has purposefully availed itself to reasonably anticipate being in this Court. Although Shehan contends that the making of a substantial contract may form the basis of this element, he has not actually alleged he entered into a contract with the Museum. Rather, he asserts he entered into a contract with Turner, which contract was for work to be performed for the Museum. The focus of his Complaint is on those contacts initiated and pursued by Turner, as Shehan does not describe any communications which may have been initiated by the Museum. Although he does assert within his Response filing that the Museum "developed a business relationship with [him] through communications . . . in relation to the Gilder Center project" and provides that he met with representatives of the Museum in January 2017 (Doc. #41-1, at 66-67), the Court should focus on the "quality of the contacts as demonstrating purposeful availment." *Air Prods.*, 503 F.3d at 551. Shehan does not provide specific facts regarding communications between himself and the Museum which would allow the

Museum to reasonably anticipate being haled into this Court. Therefore, Shehan has not established the Museum has purposefully availed itself of this forum.

Even if the Museum did purposefully avail itself of this forum, Shehan has not established his cause of action arose from the Museum's activities. While this standard is a "lenient one," it requires "that the cause of action have a substantial connection with the defendant's in-state activities." *Hall*, 2019 WL 137589, at *9. The Court of Appeals has explained that "the plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 507-08 (6th Cir. 2014). Here, the only claims asserted against the Museum are ones for punitive damages and attorney's fees; thus, no cause of action has been stated against the Museum. Moreover, Shehan does not allege that his cause of action arose from any action by the Museum. Instead he asserts that he has been damaged by Turner's alleged breaches of contracts. (Doc. # 41, at 6). Therefore, because his claims are primarily based upon the actions of Turner, Shehan has not established his cause of action arose from the Museum's actions.

The final factor asks whether the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. In considering whether the exercise of jurisdiction is reasonable, the Court must consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). Here, the exercise of jurisdiction of the Museum would be unreasonable. In looking at each factor, the Museum is a non-profit

organization in New York and thus adjudicating the action in the Eastern District of Kentucky will place a burden upon the Museum. While Kentucky "has an interest in protecting its residents from financial losses," it is not the actions of the Museum which form the basis of Shehan's claims. Rather, it is the alleged actions of Turner which Shehan asserts entitle him to relief. Thus, Kentucky does not necessarily have an interest in protecting its citizen from the Museum in this action. Moreover, although Shehan likely has an interest in adjudicating the action in his home state, New York also "has an interest in adjudicating this suit, as it involves some of its citizens." *Hall*, 2019 WL 137589, at *10. Therefore, the circumstances here weigh in favor of finding exercising personal jurisdiction to be unreasonable. Thus, because both the due process prong and the Kentucky long-arm statute are not satisfied, personal jurisdiction cannot be exercised over the Museum. The claims against the Museum will therefore be dismissed with prejudice.

### 2.    Failure to State a Viable Claim

Even if Shehan were able to present a colorable claim for this Court to exercise personal jurisdiction over the Museum, the claims against the Museum are still subject to dismissal for failure to state a claim. In his Complaint, the only claims specifically asserted against the Museum are those for punitive damages and attorney's fees. However, in his breach of contract claim regarding the 2017 Contract, Shehan also alleges that by terminating the Contract, Turner "and by extension" the Museum breached the contract. (Doc. # 1, at 15).

As a threshold matter, it is unclear whether Plaintiff intended to include the Museum in his breach of contract claim. Although the caption for his claim only asserts

breach of contract against Turner, Shehan alleges the Museum breached the 2017 Contract "by extension" of Turner's alleged breach. If the Court were to construe Plaintiff's claim as asserted against the Museum, it would nevertheless fail. To prove a breach of contract in Kentucky, a plaintiff must prove "1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *MidAmerican Distrib. v. Clarification Tech., Inc.*, 807 F. Supp. 2d 646, 666 (E.D. Ky. 2011) (quoting *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)). "[A]n enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party" and "the terms of a contract must be sufficiently complete and definite to enable the court to determine the measure of damages in the event of a breach." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997). An "agreement need not cover every conceivable term of the relationship, [but] it must set forth the 'essential terms' of the deal." *MidAmerican*, 807 F. Supp. 2d at 667 (quoting *Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n, Inc.*, 242 S.W.3d 359, 364 (Ky. Ct. App. 2009)).

In his Complaint, Shehan does not assert that he entered into the 2017 Contract with the Museum. Instead he asserts that it was Turner who awarded him the alleged Contract to perform work for the Museum. Therefore, Shehan fails to assert he had a contractual relationship with the Museum. Moreover, even assuming a contract did exist, Shehan does not identify any alleged breach by the Museum. In fact, he asserts it was Turner's actions of termination which gave rise to the claim. (*See id.* at 22-23; Doc. # 41, at 6). Thus, because Shehan has failed to establish the existence of a contractual

relationship, he has failed to present sufficient grounds to establish a claim for breach of contract against the Museum.

Additionally, Shehan asserts two separate claims for punitive damages and reasonable attorney's fees against all Defendants, including the Museum. (Doc. # 1, at 27). In his Complaint, Shehan's claim for punitive damages argues the Defendants "willfully and maliciously engaged in conduct in flagrant disregard of the rights of Plaintiff and with specific intent to cause injury." (*Id.*) He also requests an award for reasonable attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E).

Shehan's claim for punitive damages will be dismissed. "[U]nder Kentucky law, punitive damages 'are a *remedy*, not a cause of action.'" *Archey v. AT&T Mobility, LLC*, No. 2:17-cv-91-DLB-CJS, 2017 WL 6614106, at *4 (E.D. Ky. Dec. 26, 2017) (quoting *Russell v. Citi*, No. 2:12-cv-16-DLB, 2012 WL 594745, at *2 (E.D. Ky. Nov. 28, 2012)). Consequently, "to the extent Plaintiff's Complaint asserts punitive damages as a separate cause of action," the claim should be dismissed as to all Defendants. *Id.* However, "[e]ven though punitive damages are not a separate cause of action under Kentucky law, Plaintiff may still recover punitive damages should the evidence support such a finding." *Id.*

Plaintiff's separate cause of action for reasonable attorney's fees is also subject to dismissal. Shehan asserts a claim for reasonable attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E). However, the cited statute allows a court to "assess against the *United States* reasonable attorney's fees and other litigation costs reasonably incurred" under the Freedom of Information Act, and, thus, is not applicable here. 5 U.S.C. § 552(a)(4)(E). Moreover, Shehan's claim is more accurately characterized as a prayer for relief and should be dismissed to the extent he asserts the claim as a separate cause of action.

Additionally, Shehan is proceeding pro se in this action without the assistance of an attorney. Therefore, even assuming this Court has personal jurisdiction over the Museum, Shehan's claim against the Defendant would still be subject to dismissal for failure to state a claim.

### C. Under *Colorado River,* This Court Will Abstain From Hearing Shehan's Claims Against Turner Construction.

Defendant Turner argues that pursuant to the abstention doctrine articulated by the Supreme Court in *Colorado River*, this Court must dismiss or stay this matter pending resolution of a similar New York state action filed by Turner in January 2018. (Doc. # 15, at 8-19). The record reflects that on January 11, 2018, Turner filed a complaint against Shehan and other companies which Turner alleges are associated with Plaintiff, specifically Larson Themed Construction, LLC; SP Remodel, LLC; and L.T.C. Signature Environments, LLC. (*Id.* at 4; Doc. # 15-2). Like the federal action, Turner's complaint arises out of the business relationship it had with Shehan, specifically in relation to the Gilder Center Project for the Museum. (*See* Doc. # 15, at 4; Doc. # 15-2, at 4). In the state complaint, Turner alleges that it "entered into a contract with the [Museum] to perform preconstruction services for a project to construct an addition that will be known as the Richard Gilder Center[.]" (Doc. # 15-2, at 4). It asserts that "Larson, LTC and Shehan have sought to perform work for Turner on the actual construction of the" Gilder Center project. (*Id.*) However, when Turner requested Shehan and defendant companies "complete a standard pre-qualification form in order to assess their suitability to work for Turner," the Defendant alleges that Shehan "refused to complete" the form and instead "demanded that Turner enter into an agreement with" him and his company. (*Id.*).

Turner asserts that in order for Shehan and defendant companies to be considered as a potential subcontractor for the Gilder Center project, he had to enter into a confidentiality agreement, wherein he would agree "not to communicate information concerning" the project "to third parties" nor would he use information concerning the project "for any purpose other than to provide a proposal for the work involved or perform related services." (Doc. # 15, at 5; *Id.* at 5). In the state complaint, Turner alleges that Shehan and defendant companies demanded that they "had an absolute right to receive [the] contract" to perform work for the Museum and "in retaliation for Turner refusing to accede" to the demand, Shehan breached the confidentiality agreement by communicating confidential information to third parties. (Doc. # 15, at 5; Doc. # 15-2, at 5).

Turner's complaint also alleges a state law claim for interference with business relationships arising out of Turner's relationship with St. Elizabeth. Like Shehan's federal Complaint, Turner asserts it "entered into a contract to construct a new facility for St. Elizabeth[.]" (Doc. # 15-2, at 6). However, the state complaint alleges that when "Turner refused to accede" to Shehan and defendant companies' demand that Turner enter into an agreement regarding the Gilder Center project, they "contacted St. Elizabeth Healthcare to communicate false information concerning Turner for the sole purpose of interfering" with Turner's contract with St. Elizabeth. (*Id.* at 6). Additionally, Turner's final state law claim is one for coercion, asserting the defendants "made threats to Turner to communicate to others matters they considered to be damaging information unless Turner acceded to their demand to enter into a contract" to perform work for the Gilder Center project. (*Id.* at 7). A review of the New York State Court's electronic filing

database confirms Turner's assertion that Shehan and L.T.C. Signature Environments, LLC, have filed an Answer, wherein they assert an error in jurisdiction and venue. (Doc. # 15, at 6). The database reflects that no motions have been filed in state court.

Under *Colorado River*, the federal court should abstain from hearing a matter when 1) there is "'parallel' litigation pending in state court," and 2) the proposed federal litigation "would be duplicative or unwise." *Travelers Prop. Cas. Co. of America v. Associated Eng'rs, Inc.*, No. 4:13-cv-92-JHM, 2013 WL 6230613, at *1 (W.D. Ky. Dec. 2, 2013) (citing *Colorado River*, 424 U.S. at 817-18). However, "[a]bdication of the obligation to decide cases can be justified" only when "exceptional circumstances" exist as "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 813, 817 (internal quotations omitted).

The Court must first determine whether there are parallel proceedings in state court. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 340-41 (6th Cir. 1998). "Exact parallelism is not required; it is enough if the two proceedings are substantially similar." *Id.* at 340 (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (internal quotations omitted)). The Sixth Circuit Court of Appeals has found that where "the parties are substantially similar and . . . are predicted on the same allegations as to the same material facts . . . the actions must be considered 'parallel' for the purposes of the *Colorado River* abstention doctrine." *Id.*; *see also Milliman, Inc. v. Roof*, No. 3:18-cv-12-GFVT, 2018 WL 5268614, at *9 (E.D. Ky. Oct. 23, 2018) (citing *Preferred Care of Del., Inc. v. VanArsdale*, 676 F. App'x 388, 393 (6th Cir. 2017)).

Here, the cases are substantially similar. While the parties are not identical, "the parties overlap in the federal and state court action" in that they each involve Shehan and Turner. *See Salyersville Health Facilities, L.P. v. Blackburn*, No. 7:17-cv-60-KKC, 2017 WL 4570307, *2 (E.D. Ky. Aug. 1, 2017) (held that federal and state actions were parallel although one action included an additional party and the plaintiff in the state case was the defendant in the federal action). Although both the federal and state actions include parties in addition to Shehan and Turner, "[t]he presence of additional parties in one suit but not the other will not necessarily destroy parallelism." *Woody's Restaurant LLC v. Travelers Cas. Ins. Co. of America*, 980 F. Supp. 2d 785, 787 (quoting *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F.Supp.2d 609, 614 (E.D. Ky. 2010)); *see also Preferred Care*, 676 F. App'x at 394 (held federal and state actions parallel when state action included two defendants which were not included in the federal action); *Szabo v. CGU Int'l Ins.*, 199 F. Supp. 2d 715, 719-20 (S.D. Oh. 2002) (held federal and state actions were parallel when additional defendants were named in the state action, noting that "their presence . . . does not render [the state] action dissimilar" when parties in the state action were also parties in the federal action) .

Moreover, the actions are also predicated on the same allegations as to material facts. Here, the state and federal actions each arise out of and depend upon the alleged contractual and business relationship between Turner and Shehan regarding the Gilder Center project. To support his claims, Shehan asserts he had two contracts with Turner: the 2017 Contract, which Shehan asserts he was to perform work for the Museum, and the 2016 Contract, which he asserts he agreed to help Turner mend a broken relationship with St. Elizabeth in exchange for projects. (*See* Doc. # 1). Similarly, Turner's claims

also arise from the same facts. Turner's claims are based upon the allegation that Turner did not have a contractual relationship with Shehan. Specifically, the complaint asserts that when Turner "refused to accede" to Shehan's demand to enter into an agreement with him to perform work for the Museum, Shehan retaliated by communicating confidential information about the Gilder Center project. (Doc. # 15, at 5; Doc. # 15-2). Moreover, Turner's complaint also discusses the St. Elizabeth contract, and Shehan's alleged interference with that contract after Turner refused to enter into an agreement with Plaintiff. (Doc. # 15-2, at 6). In this matter, Shehan asserts that it was because of his actions that the St. Elizabeth contract was formed. (Doc. # 1, at 23-24). The essential issues in each case revolve around Shehan and Turner's business relationship regarding the Gilder Center project and St. Elizabeth, and how that relationship should be defined under law. Both the claims raised in the federal and state actions "involve the same construction," being the Gilder Center project, "the same [alleged] contracts and services, [and] the same witnesses" being those representatives from Turner and St. Elizabeth. *See Travelers*, 2013 WL 6230613, at *2. Although Shehan's federal cause of action states additional claims, "additional claims will not necessarily preclude a finding that the actions are parallel." *Szabo*, 199 F. Supp. 2d at 719 (citing *Romine*, 160 F.3d at 340). Thus, because claims are predicated on the same material facts and the parties are substantially similar, the actions are parallel.

When a court finds its case is parallel to a state case, it may decide whether abstention is appropriate by weighing the following eight (8) factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; … (4) the order in which jurisdiction was obtained[;] … (5) whether the source of governing law is state or federal; (6)

> the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (quoting *Romine*, 160 F.3d at 340-41). "These factors, however, do not comprise a mechanical checklist . . . [but] require a careful balancing of the important factors as they apply in a given case depending on the particular facts at hand." *Woody's*, 980 F. Supp. 2d at 787 (quoting *Romine*, 160 F.3d at 341) (internal quotation marks omitted). Factors which are not implicated or are considered "'neutral' weigh in favor of maintaining the status quo, *i.e.*, exercising federal jurisdiction." *See Romine*, 160 F.3d at 342; *Equitable Gathering, LLC v. Caudill*, No. 7:08-cv-216-KKC, 2010 WL 1779147, at *1 (E.D. Ky. Apr. 30, 2010).

First, this matter does not involve any res or property thus this factor weighs against abstention. The second factor looks to whether the federal forum is less convenient to the parties. "This factor 'relates to geographical considerations,' not whether the state court 'can resolve every issue in a single proceeding.'" *Woody's*, 980 F. Supp. 2d at 787 (quoting *PaineWebber, Inc.*, 276 F.3d at 207). This factor weighs in favor of abstention. If this case were to proceed, of the two contracts Plaintiff asserts have been breached, the 2017 Contract pertains to a project based in New York and is alleged to have been with a Defendant whose principal place of business is in New York. (Doc. # 15, at 13). Moreover, as Turner argues in its Motion to Dismiss, "many of Plaintiff's communications were with Turner employees in New York, all of whom are potential witnesses." (*Id.*). Although Shehan is a Kentucky resident and the federal forum is arguably more convenient for him, a relevant consideration for this Court to consider is the location of potential witnesses, relevant records and other evidence. *See GGNSC*

*Vanceburg, LLC v. Taulbee*, No. 5:13-cv-71-KSF, 2013 WL 4041174, at *3 (E.D. Ky. Aug. 7, 2013). To support or refute Shehan's breach of contract claim, the discovery in the form of evidence and witness testimony would be in New York. Consequently, the Eastern District of Kentucky is less convenient for the parties to litigate and this factor favors abstention.

The third factor also weighs in favor of abstention. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Preferred Care of Del., Inc. v. VanArsdale*, 152 F. Supp. 3d 929, 931 (E.D. Ky. 2016) (quoting *Romine*, 160 F.3d at 339) (internal quotation marks omitted). This factor is "the consideration that was paramount in *Colorado River*." *Woody's*, 980 F. Supp. 2d at 788 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983)) (internal quotation marks omitted). There is considerable overlap of the factual allegations concerning Turner and Shehan's business relationship which give rise to not only Turner's claims, but Shehan's as well. If this Court were to proceed to move forward with adjudicating Shehan's claims against Turner, specifically those pertaining to breach of contract, then not only would it carry a chance of piecemeal litigation and potentially inconsistent outcomes regarding the business relationship between the parties, but "allowing both actions to proceed could result in duplicative efforts and expense" by both the parties during discovery and by this Court. *See Brake Parts, Inc. v. Lewis*, No. 09-132-KSF, 2010 WL 3470198, at *4 (E.D. Ky. Aug. 31, 2010); *Travelers*, 2013 WL 6230613, at *3.

Significantly, Turner's action is asserted not only against Shehan, but also against the businesses which he is the president of and operates under. (*See* Doc. # 15-2). Here,

however, Shehan has sued individually for state law claims and the entities he operates under are not before this Court. Thus, there is still a question about whether this Court can afford complete relief. As discussed below, the state court has concurrent jurisdiction over Plaintiff's claims against Turner. Because the state court "has the authority to hear all of the claims . . . abstention will avoid [the] result" of piecemeal litigation. *See Healy v. Fifth Third Mortg. Co.*, No. 5:10-cv-348-KSF, 2011 WL 577385, at *4 (E.D. Ky. Feb. 9, 2011).

The fourth factor looks at the order in which jurisdiction was obtained. Here, Turner filed its action in state court on January 11, 2018 (*see id.*), while Plaintiff filed this action five days later, on January 16, 2018 (*see* Doc. # 1). Although this delay might be considered insignificant, *see, e.g., Preferred Care, Inc. v. Aaron*, No. 6:16-cv-285-DLB, 2017 WL 3319378, at *5 (E.D. Ky. Aug. 3, 2017) (held that the fourth factor was neutral as to abstention when the state court obtained jurisdiction twenty-three days prior to the federal court) (quoting *PaineWebber,* 276 F.3d at 207), the Supreme Court has suggested that there is merit in considering "the vexatious or reactive nature of either the federal or the state litigation" in determining "whether to defer to a parallel state litigation under *Colorado River*[.]" *Moses*, 460 U.S. at 17 n.20 (held that while this reasoning has considerable merit, the Court did not have to rely on such reasoning in that particular case); *see Great Earth Cos. v. Simons*, 288 F.3d 878, 888 (6th Cir. 2002) (considered whether party arguing for abstention presented evidence of whether a federal action was vexatious). Here, Shehan filed his action five days following Turner's action, asserting a breach of contract claim for a contract Turner alleges in its complaint did not exist. (*See id.*; Doc. # 15-2). Therefore, although the delay in actions was short, the state court action

was filed first, and the reactive nature of Plaintiff's federal action supports tipping this factor in favor of abstention.

The fifth factor looks to the source of governing law. Aside from Shehan's assertion that his claim for "reasonable attorney fees" is governed by federal statute (*see* Doc. # 1, at 27), which does not have merit, all of his claims against Turner, the only remaining Defendant, are governed by state law. In his Response, Shehan asserts that his state law claims are governed by Kentucky law. (Doc. # 40, at 16). Even if Plaintiff's assertion arguably has merit, there is nothing to suggest that the New York court is not capable of engaging in a proper choice-of-law analysis. Moreover, "the source-of-law factor is less significant when the states and federal courts have concurrent jurisdiction." *Woody's*, 980 F. Supp. 2d at 789 (quoting *Bates v. Van Buren Twp.*, 122 F. App'x 803, 807 (6th Cir. 2004) (internal quotations marks omitted)). Because there is concurrent jurisdiction, this factor weighs in favor of abstention. *Id.*

The sixth factor looks at the adequacy of the state court action to protect the federal plaintiff's rights. Because "Plaintiff's only potential claims here are state issues and would most properly be brought as counterclaims in the state court action," this factor also favors abstention. *Sizemore v. Nationstar Mortg., LLC*, No. 6:15-cv-100-DLB, 2016 WL 4718151, at *5 (E.D. Ky. June 27, 2016) (when plaintiff filed a motion in state court seeking permission to file a late counterclaim, this Court abstained because filing the counterclaim "would completely obviate the need" for federal litigation); *see Harding v. Apartment Inv. & Mgmt Co.*, No. 3:10-cv-439-H, 2011 WL 211528, at *5-6 (W.D. Ky. Jan. 20, 2011) (held that the sixth factor, which "concerns whether the state court can . . . hear

all of the federal plaintiff's claims," favored abstention because there was "no reason that all of [the plaintiff's] claims could not be brought as counterclaims in the" state action).

As to the seventh factor, the state and federal action are in relatively equal positions and thus this factor weighs against abstention. *See Preferred Care, Inc. v. Howell*, 187 F. Supp. 3d 796, 806 (E.D. Ky. 2016). Importantly, however, the New York action was filed first, and at the current time, this Court does not have updated information regarding that case. The record and the New York Court's electronic filing database reflect that an initial complaint and answer have been filed. While the proceedings here have not progressed beyond the parties' initial Motions to Dismiss, the Court is unable to tell whether the state parties have moved beyond the initial pleadings and discovery is underway.

Finally, the eighth factor looks to whether the state and federal court have concurrent jurisdiction. This Court and the state court have concurrent jurisdiction. Because the federal and state courts have concurrent jurisdiction, this factor weighs in favor of abstention. *See Woody's*, 980 F. Supp. 2d at 789.

In summary, six factors weigh in favor of abstention, while only two oppose. Thus, the balancing of factors weighs in favor of this Court abstaining under *Colorado River*. Additionally, "[c]ourts within this Circuit, when granting abstention, have either stayed the proceedings or dismissed the case without prejudice." *Anglen v. Wendy's-MUY Hamburger Partners, LLC*, No. 1:17-cv-02384, 2018 WL 1363313, at *5 n. 6 (N.D. Oh. Feb. 20, 2018) (citing *Karem Managed Prop., LLC v. Travelers Indemnity Co.*, No. 5:11-cv-01222, 2012 WL 671675 at *4 (N.D. Ohio Feb. 29, 2012), *Taylor v. Moore*, No. 3:14-cv-00823, 2015 WL 1011382 at *2 (N.D. Ohio Mar. 6, 2015), *Novogroder v. NOM Lima*

*Shawnee, LLC*, No. 3:07-cv-1284, 2007 WL 2417368 at *3 (N.D. Ohio Aug. 21, 2007)), *report and recommendation adopted by* No. 1:17-cv-2384, 2018 WL 1353135 (N.D. Oh. Mar. 15, 2018) (dismissed federal case without prejudice under *Colorado River* abstention doctrine); *see also Degeeter v. McNeill*, No. 07-25212-JPM/tmp, 2007 WL 9706575 (W.D. Tenn.) (abstained under *Colorado River* and dismissed action without prejudice). Therefore, this Court will abstain from exercising jurisdiction, with Shehan's claims against Turner being dismissed without prejudice.

III.     **CONCLUSION**

Accordingly, for the reasons set forth above, **IT IS ORDERED** that:

1)     The Court's prior Referral Order (Doc. # 5 at paragraph 2) is hereby **rescinded**;

2)     Defendant DOJ's Motion to Dismiss (Doc. # 22) is **granted**, and all claims against the DOJ are **dismissed with prejudice;**

3)     Defendant American Museum of Natural History's Motion to Dismiss (Doc. # 16) is **granted** and it is **dismissed** as a party to this case for lack of personal jurisdiction;

4)     Defendant Turner Construction Company's Motion to Dismiss (Doc. # 15) is **granted**, and all claims against Turner Construction are **dismissed without prejudice**; and

5)     There being no further claims remaining before this Court, this action is **stricken** in its entirety from the active docket of this Court.

This 22nd day of March, 2019.



Signed By:
David L. Bunning
United States District Judge